<u>**ORAL ARGUMENT NOT YET SCHEDULED**</u>

No. 24-3044

IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

————————

United States of America,

*Plaintiff - Appellee*

*v.*

Keith Berman, also known as Matthew Steinmann,

*Defendant - Appellant*

————————

On Appeal from the United States District Court
for the District of Columbia

————————

**REPLY BRIEF OF APPELLANT**

————————

Kevin B. Collins
Jonah Panikar
José F. Girón
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
(202) 662-5598
kcollins@cov.com

February 18, 2025          *Pro Bono Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

Table of Authorities ...................................................................ii

Introduction ............................................................................1

Argument ...............................................................................2

I.    The District Court Erred by Choosing the Wrong Disclosure Date and Misreading the Guidelines. ................................ 2

    A.    The District Court Misinterpreted What Disclosure Means Under the Fraud Guidelines. ..................................... 3

    B.    The District Court's Disclosure-Date Ruling Was Clearly Erroneous. ................................................. 7

II.    The Government's Reliance Argument is Flawed. ........................ 10

III.    The District Court's Errors were not Harmless ............................ 13

Conclusion ............................................................................21

Certificate of Compliance ..........................................................22

Certificate of Service ...............................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Al-Tamimi v. Adelson,*
  916 F.3d 1 (D.C. Cir. 2019) ................................................................ 4

*Berckeley Inv. Grp., Ltd. v. Colkitt,*
  455 F.3d 195 (3d Cir. 2006) ............................................................. 10

*Binder v. Gillespie,*
  184 F.3d 1059 (9th Cir. 1999) .......................................................... 10

*Gall v. United States,*
  552 U.S. 38 (2007) ............................................................................ 18

*Harris v. Union Elec. Co.,*
  787 F.2d 355 (8th Cir. 1986) ............................................................ 10

*Molina-Martinez v. United States,*
  578 U.S. 189 (2016) ............................................................. 14, 17, 20

*Peugh v. United States,*
  569 U.S. 530 (2013) .................................................................. 14, 17

*Rosales-Mireles v. United States,*
  585 U.S. 129 (2018) .......................................................................... 14

*United States v. Bazemore,*
  839 F.3d 379 (5th Cir. 2016) ............................................................ 11

*United States v. Brock,*
  94 F.4th 39 (D.C. Cir. 2024) ............................................................... 4

*United States v. Ebbers,*
  458 F.3d 110 (2d Cir. 2006) ............................................................. 11

*United States v. Evans,*
  744 F.3d 1192 (10th Cir. 2014) ....................................................... 10

*United States v. Gardellini,*
  545 F.3d 1089 (D.C. Cir. 2008) ........................................................... 18

*United States v. George,*
  949 F.3d 1181 (9th Cir. 2020) ............................................................. 10

*United States v. Gieswein,*
  887 F.3d 1054 (10th Cir. 2018) ........................................................... 18

*United States v. Herman,*
  No. 22-8057, 2023 WL 6861766 (10th Cir. Oct. 18, 2023) ................. 11

*United States v. Kpodi,*
  824 F.3d 122 (D.C. Cir. 2016) ............................................................. 14

*United States v. Linares,*
  367 F.3d 941 (D.C. Cir. 2004) ............................................................. 14

*United States v. Lundstrom,*
  880 F.3d 423 (2018) ............................................................................... 6

*United States v. Martinez,*
  821 F.3d 984 (8th Cir. 2016) ................................................... 16, 18, 19

*United States v. Nacchio,*
  573 F.3d 1062 (10th Cir. 2009) ........................................................... 11

*United States v. Orange,*
  21 F.4th 162 (D.C. Cir. 2021) ............................................................. 17

*United States v. Porter,*
  928 F.3d 947 (10th Cir. 2019) ....................................................... 18, 20

*United States v. Seabrook,*
  968 F.3d 224 (2d Cir. 2020) ................................................................ 16

*United States v. Solis–Bermudez,*
  501 F.3d 882 (8th Cir. 2007) ............................................................... 19

*United States v. Stein,*
  846 F.3d 1135 (11th Cir. 2017) ........................................................... 11

*United States v. Stein,*
    964 F.3d 1313 (11th Cir. 2020) ..................................................... 12, 13

*United States v. Tolbert,*
    482 F. App'x 507 (11th Cir. 2012) ....................................................... 16

*United States v. Turk,*
    626 F.3d 743 (2d Cir. 2010) ................................................................ 15

**Statutes**

18 U.S.C. § 3553(a)(4) ................................................................................ 20

**Sentencing Guidelines**

U.S.S.G.
    § 2B1.1 ............................................................... 1, 2, 3, 5, 10, 15
    § 2J1.2 ........................................................................... 15, 19
    § 3C1.1 ..................................................................................... 19
    § 6B1.4 ....................................................................................... 4

**Other Authorities**

*Disclose*, The Oxford English Dictionary (2d ed. 1989) ............................ 4

## INTRODUCTION

The government charged Mr. Berman with issuing false and misleading statements in violation of the securities laws. At sentencing, the District Court had to determine the amount of loss caused by the fraud. To measure the loss, it compared the price of Mr. Berman's company, Decision Diagnostics Corporation (DECN), during the time of the fraud and after the fraud was disclosed. But first, it had to determine the date on which the "fraud was disclosed to the market." U.S.S.G. § 2B1.1, cmt. n.3(E)(ix).

In doing so, the District Court erred thrice. It narrowed the ordinary meaning of the word "disclosed," requiring that such disclosure be "full" and that the disclosure period begin only after the fraud period ended. Its interpretive errors led the District Court to rule that the fraud was disclosed only when the government released its indictment. And it failed to hold the government to the burden of proving that investors relied on Mr. Berman's press statements, which formed the basis of the fraud charges.

On appeal, the government mostly whistles past the graveyard, ignoring the full force of the issues Mr. Berman raises. Instead of defending the District Court's interpretive errors, for instance, the government claims that the District Court did not engage in legal interpretation.

When it does address Mr. Berman's claims, the government ignores key parts of the record. It asserts that some key facts were revealed for the first time only when it indicted Mr. Berman. But it ignores SEC documents, which revealed those same facts months earlier. It alleges that Mr. Berman forfeited a legal argument, but skips over Mr. Berman's pleadings where he first asserted it.

Similarly, the government plays down the harm of the District Court's errors. But it fails to justify a sentence that exceeded, *sevenfold*, the top of the error-free Guidelines range. Because these errors each call for reversal, and because they resulted in a substantively unreasonable sentence, this Court should  vacate and remand for resentencing.

## ARGUMENT

## I.    The District Court Erred by Choosing the Wrong Disclosure Date and Misreading the Guidelines.

When determining loss amount under U.S.S.G. § 2B1.1, sentencing courts must decide when the "fraud was disclosed to the market." U.S.S.G. § 2B1.1, cmt. n.3(E)(ix). Here, the District Court erred in deciding that the fraud was not disclosed until Mr. Berman was indicted, even though, months before, the SEC had suspended DECN stock, levelled detail accusations of fraud against DECN, and trading websites warned investors by stamping a skull-and-crossbones image next to DECN's ticker symbol.

The District Court reached that clearly erroneous factual conclusion by misinterpreting the Sentencing Guidelines twice over. First, the District Court required "full disclosure," even though the text does not. Second, the District Court assumed that disclosure could not occur until the fraud period ended, imposing a continuity requirement unmoored from the text.

The government elides this basic argument in three ways. First, it offers that the District Court never interpreted the relevant Guidelines text because it never "impose[d] a blanket rule" requiring full disclosure. Appellee's Br. at 32. Second, it claims that Mr. Berman forfeited his argument challenging the District Court's continuity requirement. Third, the government defends the District Court's factual conclusions by stressing that Mr. Berman's obstruction nullified the pre-indictment public disclosure. These arguments all fail.

## A.   The District Court Misinterpreted What Disclosure Means Under the Fraud Guidelines.

The District Court read the phrase "fraud disclosed to the market" as "fraud *fully* disclosed to the market." Tellingly, the government never argues that the District Court got that interpretation right, because it cannot. It, for instance, never discusses the plain meaning of the word "disclosed." Nor does it explain why the Commission implicitly smuggled a full-disclosure requirement in § 2B1.1 even though, in nearby provisions, it imposed such a requirement expressly. *Compare* U.S.S.G.

§ 2B1.1, cmt. n.3(E)(ix), *with* U.S.S.G. § 6B1.4, cmt. n.1 (providing that a qualifying "stipulation must *fully and accurately disclose* all factors relevant to the determination of sentence.") (emphasis added). Accordingly, the government has forfeited any argument that the District Court accurately interpreted Guidelines commentary. *See Al-Tamimi v. Adelson,* 916 F.3d 1, 6 (D.C. Cir. 2019) ("A party forfeits an argument by failing to raise it in his opening brief."). The plain meaning of the term is clear and it is consistent with the broader commentary under the Guidelines.

Rather than defend the District Court's implausible interpretation, the government advances two separate arguments. First, it denies that the District Court ever interpreted the Guidelines. Second, the government appears to maintain that even if the District Court was engaged in legal interpretation, it never imposed a full-disclosure requirement. Appellee's Br. at 17. Both arguments fail.

The District Court could not decide when "the fraud was disclosed to the market" without defining the word "disclosed"—this is quintessential legal interpretation. "Disclosed" means "to make openly known, reveal, declare." *Disclose*, The Oxford English Dictionary (2d ed. 1989); *see United States v. Brock*, 94 F.4th 39, 51 (D.C. Cir. 2024) (interpreting a guideline based on its "plain, natural, and ordinary meaning").

Regardless, the government claims, the District Court never required full disclosure here. This argument ignores the record. After all, the District Court repeatedly justified its ruling on the grounds that only the indictment "fully disclosed" Mr. Berman's fraud. Indeed, the District Court's second sentence during its oral ruling made that exact point: "I agree with the Government. December 18, 2020, was the date on which the *full* scope of the Defendant's misconduct became known to the public." A510 (emphasis added). When it rejected Mr. Berman's proposed disclosure dates, it did so because the "the SEC's public announcements did not *fully disclose*" the fraud. A510 (emphasis added). On the District Court's view, the SEC's public notices "were not as *comprehensive*" as the government's later indictment. A510–11 (emphasis added). These statements make clear that, for the District Court, anything less than full disclosure did not count as disclosure under U.S.S.G. § 2B1.1. To read "disclosed to the market" as "fully disclosed to the market" is to interpret legal text.

In response, the government tries to rewrite the District Court's ruling, arguing that the District Court required *effective* disclosure, not full disclosure. Appellee's Br. at 33 ("The court thus determined that the SEC notices failed to disclose Berman's fraud … because Berman's remaining deceptive conduct was … effective at[] undermining the revelatory value of these notices."). On its view, the disclosure period begins only if the market reacts to such disclosure.

5

This novel interpretation of both the District Court's words and the Guidelines is no more help to the government. The basic problem is that the government confuses the ordinary meaning of the word disclose with the consequences of disclosure. To disclose is to reveal and make publicly known. And that can happen even if people do not react to disclosure as one would hope.

The government also defends the District Court's second interpretive error—the District Court's atextual assumption that the disclosure period could begin only after the fraud period ended. The government does not deny that the District Court was engaged in legal interpretation, let alone defend the District Court's reading. Instead, the government argues that Mr. Berman forfeited his argument by not raising it below.

That argument warrants only brief attention. After all, Mr. Berman's entire argument below contradicted the District Court's continuity requirement by stressing that disclosure occurred even before the fraud ended. *See* SA262 (Mr. Berman's brief arguing that "the fraud occurred from March 3, 2020 to July 10, 2020"); SA 266 ("[T]he fraud was disclosed by the SEC suspension order on April 23, 2020.").[1]

---

[1] Indeed, at the hearing where the parties discussed the loss amount, counsel for Mr. Berman highlighted the Eighth Circuit's decision in *United v. Lundstrom*, in which a court found that the disclosure date occurred before the defendant's obstruction ended. A411–413 (citing *United States v. Lundstrom*, 880 F.3d 423 (2018)).

## B. The District Court's Disclosure-Date Ruling Was Clearly Erroneous.

According to the government, a fraud could not be disclosed until the public learns every fact about it. Once again, that argument makes sense only if the word "disclosed" means "fully" or "convincingly" disclosed. Otherwise there is no principled reason why the pre-indictment disclosures did not suffice. And as noted earlier, not only is that interpretation wrong, but the government failed to defend it in its brief.

In an effort to save its erroneous legal interpretation, the government exaggerates the amount of new information contained in the December 2020 indictment. For instance, the government asserts that "the public was not previously aware that Berman had made false and misleading statements 'touting the progress of DECN's emergency use application to the FDA.'" Appellee's Br. at 24 (quoting the December 15, 2020 indictment). Not so. Those statements were made in April 2020. More than six weeks later, the SEC issued a 12-page document accusing Mr. Berman of fraud. A263–274. And it devoted an entire section of that document to describing Mr. Berman's "[m]isleading [s]tatements [c]oncerning FDA [a]pproval." A271–272 ("[T]he statements on the website give the misleading impression that the COVID-19 kit is ready or near-ready for purchase … As of April 23, 2020, Division staff were unable to identify any FDA-approved medical devices relating to COVID-

19 in the FDA's publically [sic] available databases under the name of DECN, Berman, or its subsidiaries."). So, even under the government's interpretation of disclosure, the public was aware of the facts the government believes are critical.

The government's position that the indictment revealed "a key component of Berman's" fraud is also undermined by the government's consistent representations below. Before trial, the government confirmed that the fraud took place from March to July 2020, before much of the obstructive conduct that the government now says extended the fraud and disclosure periods. A year after charging Mr. Berman, it explicitly told the District Court that "[t]his case is about the lies the defendant told to investors in March 2020." Gov't Resp. to Mr. Berman's Second Motion in Limine at 4 (Nov. 15, 2021), ECF No. 44. The government represented that public statements after "July 2020 about … plans to develop a saliva test [are] not relevant to the elements of the crimes charged." Gov't Reply Re Omnibus Motion in Limine at 4 (Aug. 17, 2021), ECF No. 37. The charges, the government said, are "based on the false and misleading statements [Mr. Berman] made in March, April, May, and June 2020 relating to the purported COVID-19 *blood* test." *Id.* (emphasis added). Moreover, the government stressed that while "the superseding indictment references the July 10, 2020 press release, it references only the false statements [Mr. Berman] made in that press release relating to the blood test, not the saliva test." *Id.* Thus, while the

8

public learned about Mr. Berman's *obstruction* in the indictment, it knew nearly all the details about Mr. Berman's *fraud*. And since the Guidelines focus on the date "the *fraud* was disclosed," Mr. Berman's obstruction is irrelevant.

Next, the government touts the fact that the District Court rejected Mr. Berman's expert, the former Chief Compliance Officer at TD Ameritrade. But neither the District Court nor the government ever deny the content of the pre-indictment disclosures. They do not deny, for instance, that the SEC suspended trading in DECN's stock. A259. They do not deny that on May 20, 2020, the SEC publicly accused Mr. Berman of fraud in a detailed 12-page document. A262–74. Nor do they deny that as early as July 20, trading websites splashed DECN's landing page with a skull-and-crossbones and warned investors about fraud, requiring them to phone in orders instead of buying them online. A275–77.

The government also asserts that market statistics support the District Court's disclosure-date ruling. Appellee's Br. at 28. The District Court observed that DECN's share price returned to its pre-fraud levels only once the government released its indictment. *See* SA362 (chart describing DECN's share price over time). Because pre-indictment disclosures had not had the same effect, argues the government, those disclosures did not count. Appellee's Br. at 28–29.

This argument fails for two reasons. First, it misinterprets relevant text, reading "fraud disclosed to the market" as "fraud disclosed to the

9

market such that the market prices the relevant stock at pre-fraud prices." That is more than the ordinary meaning of the word disclosed can bear. Second, the government's reasoning is circular. If one compares the prices of the fraud period to the prices of the disclosure period, and one defines the disclosure period by looking to when prices fell to pre-fraud levels, then there will always be a loss. But whether there was a loss was exactly the proposition contested by the parties.

## II. The Government's Reliance Argument is Flawed.

The government asserts that the District Court had "more than enough evidence" to support its determinations that Mr. Berman (1) caused $28 million in loss and (2) caused substantial financial hardship to five or more victims. Appellee's Br. at 40–48. But the government misunderstands the law surrounding reliance.

Section 2B1.1 requires the government to prove, in every case, (1) "factual or 'but for' causation" and (2) "legal or foreseeable causation." *United States v. Evans*, 744 F.3d 1192, 1196 (10th Cir. 2014); *United States v. George*, 949 F.3d 1181, 1187 (9th Cir. 2020) (same). "In the securities realm, 'but for' causation is referred to as reliance." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 222 (3d Cir. 2006); *Harris v. Union Elec. Co.*, 787 F.2d 355, 366 (8th Cir. 1986) (similar); *Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999) (similar). To prove reliance, the government must provide sufficient evidence showing "that all of the

investors" in the loss calculation "relied on the defendant's fraudulent information." *United States v. Stein,* 846 F.3d 1135, 1153–54 (11th Cir. 2017); *see also United States v. Bazemore*, 839 F.3d 379, 391 (5th Cir. 2016) ("[A] loss that 'resulted from' an offense is one that would not have occurred *but for* the occurrence of the offense.") (citing *Federal Sentencing Guidelines Handbook* 352 (2015–2016)); *United States v. Ebbers*, 458 F.3d 110, 128 (2d Cir. 2006) ("Losses from causes other than the fraud must be excluded from the loss calculation."); *United States v. Nacchio*, 573 F.3d 1062, 1078–82 (10th Cir. 2009) (similar).[2]

This requirement exists for a reason. Including losses not caused by reliance on the defendant's fraudulent information can unfairly inflate a defendant's Guidelines range by several orders of magnitude. This case is the perfect example. Evidence showed that investors relied on DECN's development of a *saliva-based* test—not the blood-based test—after DECN announced it was switching to a saliva-based test in July 2020. *See* Appellant's Br. at 45 (providing examples). Thus, these investors

---

[2] *United States v. Herman*, which the government cites, actually supports this point. *See* Appellee's Br. at 46 (citing No. 22-8057, 2023 WL 6861766 (10th Cir. Oct. 18, 2023) (unpublished)). In *Herman*, the Tenth Circuit affirmed the loss amount calculation because, "[u]nlike in *Stein*," every stock trade in that case "was attributable to [the defendants'] conspiracy" since "[n]o market for [the defendants'] stock would have existed without the conspiracy." *Herman*, 2023 WL 6861766, at *10 (10th Cir. Oct. 18, 2023). That is not the case here: DECN was a legitimate company that sold other medical devices, and its stock was trading for reasons other than Mr. Berman's fraudulent scheme involving a blood-based COVID-19 test.

pushed the price during the fraud period up, even though they did not rely on the fraud to buy DECN stock. *See id.* at 45–46. As a result the difference between the fraud price and the disclosure price grew for reasons totally unrelated to the fraud.

Tellingly, the government's brief is silent on the District Court's erroneous assumption.[3] Instead, the government argues that testimony from live witnesses at sentencing is unnecessary. *See* Appellee's Br. at 48–49. But Mr. Berman is not arguing that testimony from investors is required in every case. Rather, Mr. Berman is arguing that record evidence on investor reliance in *this case* showed that the bases for both the loss amount and the substantial financial hardship enhancement were faulty. There was strong reason to believe that a large portion of investors in the government's loss figure—*e.g.*, those who invested from July 2020 onward—invested in reliance on Mr. Berman's *non-fraudulent* conduct. Without investor testimony, the government's evidence at sentencing was insufficient to establish that all investors in the loss amount calculation relied on Mr. Berman's fraudulent conduct.

The government's citation to *Stein II* does not fix its problem. *See* Appellee's Br. at 47 (citing *United States v. Stein*, 964 F.3d 1313 (11th

---

[3] The government's silence does not change the fact that the government argued extensively throughout the case that statements about the saliva-based test had nothing to do with Mr. Berman's fraudulent scheme. *See* Appellant's Br. at 45–46. The PSR reflected that position, with no mention of Mr. Berman's saliva-based test. *See* A422–A452.

Cir. 2020)). In *Stein II*, the Eleventh Circuit affirmed the sentencing court's loss calculation after the government "remov[ed] from consideration" investors who did not rely on the defendant's fraudulent press releases. 964 F.3d at 1320. This recalculation "cut the government's proposed loss amount in half." *Id.* Investor testimony was not necessary because the government's expert used a statistical model that excluded alternate causes for investing in the defendant's stock, which winnowed the field of investors in the loss calculation to only those that relied on the defendant's fraudulent press releases. *See id.* at 1320–21.

Here, the government's expert did not do that. Despite recognizing the importance of analyzing "firm-specific information" in calculating loss amount, A298, the government's expert admitted that his methodology did not take them into account, A322 (admitting that he "did not evaluate with a regression analysis firm-specific facts"). Indeed, unlike the expert in *Stein II*, the government's expert in this case did not use a methodology that excluded individuals who invested in reliance on non-fraudulent information (*e.g.*, DECN's saliva-based test).

## III. The District Court's Errors were not Harmless.

In passing, the Government asserts that any Guidelines error on the District Court's part "was harmless." Appellee's Br. at 53. If there is "any doubt[,]" however, as to whether the error "affected the District Court's sentencing decision," then this Court "will *not* hold the error to

13

be harmless." *United States v. Kpodi*, 824 F.3d 122, 129 (D.C. Cir. 2016) (cleaned up) (emphasis added). "The government bears the burden of proving the absence of such an effect." *United States v. Linares,* 367 F.3d 941, 952 (D.C. Cir. 2004). The government has not met its burden here. The incorrect loss calculation influenced the District Court's sentence of 84 months' imprisonment, which is seven times higher than the high end of the correct Guidelines range. And the District Court did not provide sufficient justification to support varying upward by at least six years from the correctly calculated range, particularly for conduct already taken into account by the Guidelines.

"When a defendant is sentenced under an incorrect Guidelines range … the error itself … most often will[] be sufficient to show a reasonable probability of a different outcome." *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016); *Rosales-Mireles v. United States*, 585 U.S. 129, 139 (2018) ("[A]n error resulting in a higher range than the Guidelines provide usually establishes a reasonable probability that a defendant will serve a prison sentence that is more than 'necessary' to fulfill the purposes of incarceration."). That is because the Guidelines "are the framework for sentencing and anchor the district court's discretion." *Molina-Martinez*, 578 U.S. at 198–199 (cleaned up). Indeed, "there is 'considerable empirical evidence indicating that the Sentencing Guidelines have the intended effect of influencing … sentences.'" *Id.* at 199–200 (quoting *Peugh v. United States*, 569 U.S. 530, 541 (2013)). More

14

relevant here, courts have recognized that loss-amount calculations are often "*the most consequential determination*" in securities fraud cases. *United States v. Turk*, 626 F.3d 743, 748 (2d Cir. 2010) (emphasis added). After all, "this factor can increase the adjusted offense level by as few as zero or as many as 30 points." *Id.*

Those calculations were consequential here. Because of the District Court's error, Mr. Berman's offense level ballooned by over 20 levels, resulting in a Guidelines range of 168–210 months' imprisonment. As the table below demonstrates, had the District Court correctly calculated Mr. Berman's Guidelines sentence, his obstruction count would have controlled the offense-level calculation, and thus his total offense level would have been 10, resulting in a Guidelines range of only 6–12 months' imprisonment. Appellant's Br. at 21 n.7.

| District Court's Calculation | | Correct Calculation (Fraud Counts) | | Correct Calculation (Obstruction Count) | |
|---|---|---|---|---|---|
| Base Offense Level (§ 2B1.1) | 7 | Base Offense Level (§ 2B1.1) | 7 | Base Offense Level (§ 2J1.2) | 14 |
| Loss Amount | +22 | Loss Amount | +0 | | |
| Substantial Financial Hardship | +4 | Substantial Financial Hardship | +0 | | |
| Sophisticated Means | +2 | Sophisticated Means | +2 | | |
| Obstruction Enhancement | +2 | Obstruction Enhancement | +2 | | |
| Adjusted Offense Level | 37 | Adjusted Offense Level | 11 | Adjusted Offense Level | 14 |

| Acceptance of Responsibility | -2 | Acceptance of Responsibility | -2 | Acceptance of Responsibility | -2 |
|---|---|---|---|---|---|
| "Zero-Point Offender" Adjustment | -0 | "Zero-Point Offender" Adjustment | -2 | "Zero-Point Offender" Adjustment | -2 |
| Total Offense Level | 35 | Total Offense Level | 7 | Total Offense Level | 10 |

The District Court's sentence, 84 months, is *seven times* higher than the high-end of the correct Guidelines range. This disparity alone reveals that the incorrect Guidelines calculation impacted Mr. Berman's sentence. *See United States v. Seabrook*, 968 F.3d 224, 234 (2d Cir. 2020) (error not harmless where district court "would have had to vary upward by more than double the applicable range to reach the sentence … that it imposed"); *United States v. Martinez*, 821 F.3d 984, 989 (8th Cir. 2016) (error not harmless where flawed Guidelines calculation led to sentence nine years higher than high end of the correct range); *United States v. Tolbert*, 482 F. App'x 507, 509 (11th Cir. 2012) (error not harmless where variance would be "126 months from the high end of the Guidelines range").

True enough, the District Court said it "would still issue the same sentence even if [it was] wrong about the guideline range, including … the loss calculation in particular." A566; *see also* Appellee's Br. at 52–53 (arguing the same). But that statement does not render the District Court's errors harmless for three reasons.

16

*First*, as a practical matter, the District Court spent a great deal of time determining the loss amount. The District Court asked the parties to brief their positions on the applicable loss amount separately from and before addressing any other applicable Guideline or sentencing factor. A234. The parties did so, submitting over 40 pages of briefing about the loss amount alongside hundreds of pages of exhibits. The District Court then held a hearing to discuss just the loss-amount issue. During that hearing, the District Court heard expert testimony from both sides on the issue and asked both experts questions. The District Court then heard oral argument from both sides on their respective positions regarding the loss amount. Simply put, the District Court would not have gone through all this trouble to determine the appropriate loss amount if the loss amount was not an important factor in its sentencing decision.

The District Court admitted as much when it said it was "varying down from what [it] believe[d] to be the properly calculated guideline range." A566. As the Supreme Court has held, "if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, then the Guidelines *are in a real sense the basis for the sentence*." *Molina-Martinez*, 578 U.S. at 199 (quoting *Peugh*, 569 U.S. at 542).

*Second*, the District Court did not provide a sufficient justification for what would have been such a high variance upward. While there may be no prejudice if it is clear "the court would have imposed the same sentence irrespective of the Guidelines," *United States v. Orange*, 21

17

F.4th 162, 167 (D.C. Cir. 2021), "[i]t is not enough for the district court to say that its conclusion would be the same even if all the defendant's objections to the presentence report had been successful," *United States v. Porter*, 928 F.3d 947, 963 (10th Cir. 2019) (quoting *United States v. Gieswein*, 887 F.3d 1054, 1062 (10th Cir. 2018)). The justification for any variance must be "sufficiently compelling to support the degree of the variance." *Gall v. United States*, 552 U.S. 38, 50 (2007). "[A] major departure should be supported by a more significant justification than a minor one" to "allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.*

That did not happen here. The sentence imposed is *seven times* higher than the high-end of the correctly calculated Guidelines range. The District Court provided a limited discussion of "aggravating factors," alluding to Mr. Berman's obstructive conduct, that were ultimately mitigated by Mr. Berman's health and his genuine efforts to develop a COVID-19 test. A565. The District Court did not (and could not) provide sufficient justification to support such an extreme variance upward for a first-time offender like Mr. Berman. *See Martinez*, 821 F.3d at 989–90 (rejecting district court's claim that it would have imposed the same sentence even if defendant was not a career offender because the district court's "justifications do not support the degree of the upward variance").[4]

---

[4] This analysis also disposes of the government's substantive unreasonableness arguments. True enough, only the unusual case will involve a substantively unreasonable sentence. *United States v.*

In fact, to the extent any variance upward would be based on Mr. Berman's obstructive conduct, the correctly calculated Guidelines range already accounts for that conduct. Mr. Berman's properly calculated adjusted offense level for his fraud convictions is 11, whereas his adjusted offense level for obstruction of justice is 14. *See supra* at 15–16; U.S.S.G. § 2J1.2. The offense level for obstruction of justice would therefore control the calculation of Mr. Berman's total offense level, *see* U.S.S.G. § 3C1.1, cmt. n.8, which would be 10 after taking into account acceptance of responsibility and the "zero-point offender" adjustment, *see supra* at 15–16; Appellants' Br. at 21 n.7. "While a district court may consider factors already taken into account in the guideline range, 'substantial variances based upon factors already taken into account in a defendant's guidelines sentencing range seriously undermine sentencing uniformity.'" *Martinez*, 821 F.3d at 989 (quoting *United States v. Solis–Bermudez*, 501 F.3d 882, 885 (8th Cir. 2007)). Mr. Berman's conduct here does not support an upward variance of *six additional years of imprisonment* when the Guidelines range already takes his obstructive conduct into account.

*Third*, this Court should not encourage the District Court's attempt to insulate its decision from correction. While the application of an incorrect, higher Guidelines range can be harmless in certain situations,

---

*Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008). But it is unusual to impose a sentence seven times higher than the highest bound of the Guidelines range.

the Supreme Court has declared that it should happen in only "unusual circumstances." *Molina-Martinez*, 578 U.S. at 201; *see also Porter*, 928 F.3d at 963 (describing such cases as "rare"). This is because "[t]he Guidelines' central role in sentencing means that an error related to the Guidelines can be particularly serious." *Molina-Martinez*, 578 U.S. at 199. Endorsing what the District Court did here would frustrate sentencing courts' abilities to give meaningful consideration to "the kinds of sentence and the sentencing range established for ... the applicable category of defendant as set forth in the guidelines," thereby increasing sentencing disparities amongst defendants. 18 U.S.C. § 3553(a)(4). It would also impede the development of the law on federal sentencing. This Court should therefore remand Mr. Berman's case for resentencing in light of the correct Guidelines range.

## CONCLUSION

For the reasons explained above, this Court should vacate the judgment and remand to the District Court for a new sentencing hearing.

Dated: February 18, 2025        Respectfully submitted,

*/s/ Kevin B. Collins*
Kevin B. Collins
Jonah Panikar
José F. Girón
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
(202) 662-5598
kcollins@cov.com

*Pro Bono Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,660 words, excluding the parts of the brief exempted by Fed. R. App. 32(f) and D.C. Cir. R. 32(e)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO, Version 2402, in 14-point Century Schoolbook font.

Dated: February 18, 2025

*/s/ Kevin B. Collins*
Kevin B. Collins
Jonah Panikar
José F. Girón
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
(202) 662-5598
kcollins@cov.com

*Pro Bono Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2025, I caused copies of the foregoing to be served by the Court's CM/ECF system, which will send a notice of the filing to all registered CM/ECF users.

*/s/ Kevin B. Collins*
Kevin B. Collins
Jonah Panikar
José F. Girón
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
(202) 662-5598
kcollins@cov.com

*Pro Bono Counsel for Appellant*